IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LEVI KADE NELSON,<br><br>Defendant. | CR 24-124-BLG-SPW<br><br>ORDER |

On January 22, 2025, Defendant Levi Kade Nelson moved to dismiss the indictment charging him with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) based on the United States Supreme Court's decisions, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 602 U.S. 680 (2024). (Docs. 20, 21). He contends that *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), which upheld § 922(g)(1)'s constitutionality under the Second Amendment, no longer controls in the wake of *Bruen* and therefore, the Court must review § 922(g)(1)'s constitutionality under the *Bruen* framework. (Doc. 21 at 7–12). Nelson argues that under the *Bruen* framework, § 922(g)(1) violates his Second Amendment right to bear arms.

The Government responded on January 29, 2025, arguing that the Court should deny Nelson's motion because *Vongxay* is binding precedent and forecloses

1

Nelson's constitutional challenge. (Doc. 22). The Government further asserts that even if *Vongxay* does not control, § 922(g)(1) remains constitutional under the *Bruen* framework. (Doc. 22 at 7).

Nelson did not reply.

For the following reasons, the Court denies Nelson's motion.

## I. Background

On August 28, 2024, a grand jury returned an indictment charging Nelson with one count of prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). According to Nelson, he has two prior felony convictions including receiving stolen property and theft. (Doc. 21 at 2).

## II. Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The Court has determined Nelson's motion is appropriate for pretrial resolution because it solely involves a question of law.

## III. Analysis

Section 922(g)(1) provides that "it shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term

exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition." Nelson argues that the statute is unconstitutional as applied to him because it violates his Second Amendment right to possess firearms under the Supreme Court's decisions in *Heller*, *Bruen*, and *Rahimi*. (Doc. 21). Nelson contends that Ninth Circuit precedent, specifically *Vongxay*, is not controlling in the wake of *Bruen* and *Rahimi*. (*Id.* at 7). Nelson urges the Court to apply *Bruen* and find that: (1) the Second Amendment's plain text protects his person and conduct, (2) lifetime disarmament for convicted felons is not rooted in our Nation's history and tradition, and (3) in any case, the Government bears the burden to prove that § 922(g)(1) is consistent with our Nation's history and tradition of firearm regulation. (Doc. 21 at 15–20).

In response, the Government argues that *Vongxay* is binding Ninth Circuit precedent post-*Bruen* and forecloses Nelson's challenge. (Doc. 22 at 2–7). The Government cites numerous cases, including opinions from this Court, to demonstrate that Ninth Circuit district courts have upheld *Vongxay* even in the wake of *Bruen*. Alternatively, the Government reasons that even under the *Bruen* framework, § 922(g)(1) is consistent with our Nation's historical tradition of firearm regulation. (*Id.* at 7–11).

Before addressing the parties' arguments in the case, the Court must briefly address the Second Amendment's jurisprudence status in the Ninth Circuit as it

3

relates to § 922(g)(1). In May 2024, a Ninth Circuit three judge panel found that 18 U.S.C. § 922(g)(1) was unconstitutional as applied to the nonviolent felon defendant in that case. *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024). At that time, *Duarte* was the most recent decision related to the constitutionality of § 922(g)(1) in the Ninth Circuit. In July 2024, the Ninth Circuit granted rehearing *en banc* in *Duarte* and vacated the panel's decision. 101 F.4th 657, *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. Jul. 17, 2024). The Ninth Circuit heard oral argument *en banc* on December 11, 2024. As of today, no opinion has been issued. This Court recognizes that "a decision that has been vacated has no precedential authority whatsoever." *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009) (internal citation omitted).

Provided the vacated status of *Duarte*, the Court will first address the authority of *Vongxay* as disputed by Nelson and relied on by the Government. The Court will then analyze Nelson's constitutional challenge under *Bruen*.

A. Vongxay *Governs*

The *Vongxay* court, bound by its decision in *United States v. Younger*, 398 F.3d 1179 (9th Cir. 2005), held that "§ 922(g)(1) does not violate the Second Amendment as it applies to . . . a convicted felon." 594 F.3d at 1118. The *Vongxay* holding was "buttressed by the fact that *Younger* upheld the very type of gun possession restriction that the Supreme Court deemed 'presumptively lawful.'" *Id.*

4

at 1116 (quoting *Heller*, 128 S. Ct. at 2817 n. 26) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."). Though the legal inquiry ended with *Younger*, the court examined caselaw and historical examples which lent credence to the post-*Heller* viability of *Younger*'s holding." *Id.* at 1116.

Here, Nelson argues that "*Vongxay* no longer stands firm." (Doc. 21 at 7). Specifically, Nelson takes issue with the caselaw and historic gun restriction examples used by the *Vongxay* court to bolster its holding. (*Id.*). Specifically, Nelson suggests that *Vongxay* cannot be controlling post-*Bruen* when the case law and historic gun restriction examples "are no longer satisfactory." (*Id.* at 9). First, Nelson argues that *Vongxay* endorsed the application of a Fifth Circuit means-end scrutiny test that was recently rejected by the *Bruen* court and found to be obsolete by the Fifth Circuit. (*Id.* at 8–9 (citing *Vongxay*, 594 F.3d at 1116–117 (citing *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004); citing *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024))). Second, Nelson argues that *Rahimi* undermined *Vongxay*'s emphasis placed on the link between "virtuous citizenry" and the right to bear arms. (*Id.* at 10 (citing *Vongxay*, 594 F.3d at 1118; *Rahimi*, 602 U.S. at 701–02). Third, Nelson argues that *Vongxay* observed at the time that no court under *Heller* had found § 922(g) constitutionally suspect—which is no longer the case. (*Id.* at 11 (citing *Vongxay*, 594 F.3d at 1117)). Finally, Nelson argues that *Vongxay*

erroneously lent credit to historical support for barring felons from the militia as a justification for Second Amendment restrictions placed on felons. (*Id.* (citing *Vongxay*, 594 F.3d at 1117)).

Despite Nelson's contentions, this Court is bound by *Vonxgay*'s holding. Importantly, "the doctrine of *stare decisis* concerns the *holdings* of previous cases, not the rationales." *In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996). "[U]nder the doctrine of *stare decisis* a case is important only for what it decides —for the 'what,' not for the 'why,' and not for the 'how.'" *Id.* *Vongxay*'s holding is clear on the matter. "[Section] 922(g)(1) does not violate the Second Amendment as it applies to . . . a convicted felon." *Vongxay*, 594 at 1118; *see also United States v. Whitney*, No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024) ("The felon-in-possession statute, 18 U.S.C. § 922(g)(1) is facially constitutional.").

Thus, without *Duarte*, *Vongxay*'s precedent stands, as this Court, other judges in the District of Montana, and other district courts in the Ninth Circuit have repeatedly held before *Duarte* and after *Duarte* was vacated. *See, e.g., United States v. Lyles*, CR 23-122-BLG, 2024 WL 4347944 (D. Mont. Sept. 30, 2024) (finding *Vongxay* remains binding precedent); *United States v. Page*, CR 23-06-H, 2023 WL 8702081, at *2 (D. Mont. Dec. 15, 2023) (collecting District of Montana and other Ninth Circuit district courts holding that *Vongxay* "remains binding authority after *Bruen*"); *United States v. Thomas*, 2:22-cr-0129, 2024 WL 3459059, at *1 (D. Nev.

July 18, 2024) (applying *Vongxay* after *Duarte* was vacated); *United States v. Coleman*, CR-23-02363-001, 2024 WL 3890710, at *2 (D. Ariz. July 29, 2024), *report and recommendation adopted by* 2024 WL 3888700 (same). Those courts applying *Vongxay* have held that § 922(g)(1) "passes constitutional scrutiny." *United States v. Page*, CR 23-06-H, 2023 WL 8702081, at *2 (D. Mont. Dec. 15, 2023).

Though this Court finds that the *Vongxay* decision forecloses Nelson's challenge, Nelson asks the Court to reconsider the constitutionality of § 922(g)(1) under the *Bruen* framework. (Doc. 22 at 14–15). The Court recognizes that "*Bruen* effected a sea change in Second Amendment law." *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1041 (4th Cir. 2023). Accordingly, the Court will consider the parties' arguments under the framework. *See Moore*, 86 F.4th at 1041.

B.   The Bruen *Framework*

The Second Amendment guarantees as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2022, the Supreme Court decided *Bruen* finding that the Second Amendment's plain text coupled with an historical analysis of our Nation's gun regulation traditions protects an individual's right to carry a handgun for self defense. *Bruen*, 597. U.S. at 17, 28–29. The Court rejected the means-end scrutiny tests previously applied by

appellate courts, holding instead that courts must apply "[t]he test set forth in *Heller*" to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26 (citing *Heller*, 554 U.S. 570).

First, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Second, to regulate protected conduct, the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.* The historical analysis requires courts to pay close attention to "[w]hy and how the regulation burdens the right." *Rahimi*, 602 U.S. at 692; *Bruen*, 597 at 29. When engaging in analogical inquiry, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 692 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29); *see also Bruen*, 597 U.S. at 30 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*.") (emphasis in original). Specifically, "the government must prove that the firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 20. "Only then may a court conclude that the individual's conduct falls outside

the Second Amendment's 'unqualified command.'" *Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961).

Here, the Government argues that "the regulatory tradition of disarming felons in the United States is so foundational that *Heller*, *McDonald*, *Bruen*, and *Rahimi* all took the premise to be largely self-evident." (Doc. 22 at 9). The Government points to numerous caselaw examples finding that early American disarmament laws barring certain groups of people are relevantly similar to § 922(g)(1). (*Id.* 10–11).

### 1. Plain Text

The threshold question under *Bruen* is whether the Second Amendment applies to Nelson. The right to keep and bear arms is held by "the people." U.S. Const. amend. II. Nelson argues that the Second Amendment's plain text applies to him because he is an American citizen and the term "people" "refers to all members of the political community, not an unspecified subset." (Doc. 21 at 15 (citing *Heller*, 554 U.S. at 580). The Government assumes *arguendo* that Nelson is covered by the Second Amendment and otherwise, does not dispute the plain text analysis. (Doc 22 at 8).

"While the Supreme Court has identified a longstanding tradition of prohibiting convicted *felons* from possessing guns, it has never suggested that felons are not among 'the people' within the plain meaning of the Second Amendment." *United States v. Perez-Garcia*, 96 F.4th 1166, 1180 (9th Cir. 2024). No higher court

has ruled on whether felons are included in the "people" protected by the Second Amendment. However, Ninth Circuit district courts seem to agree that, under *Heller* and *Bruen*, the Second Amendment right is limited to law-abiding citizens, not felons. *See United States v. Butts*, 637 F. Supp. 3d 1134, 1137–38 (D. Mont. 2022) (holding that the Second Amendment is not extended to felons based on *Bruen* and *Heller*'s repeated references to "law-abiding citizens" and statements that felon dispossession statutes are "presumptively lawful"); *United States v. Roberts*, 710 F. Supp. 3d 658, 672 n.157 (D. Alaska 2024) (collecting cases holding the same).

In contrast, other courts apply a "rights-based analysis," which asserts that "all people have the right to keep and bear arms but that history and tradition support Congress's power to strip certain groups of that right."[1] *Roberts*, 710 F. Supp. 3d at 675 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (J. Barrett, dissenting)); *see also United States v. Montes*, No. 1:23-cr-00182-1, 2024 WL 3904631, at *4 (N.D. Ill. Aug. 22, 2024) (holding that felons are within the "people" covered by the Second Amendment because *Heller* and *Bruen*'s discussion of law-abiding citizens' Second Amendment rights did not decide the question of the scope

---

[1] *Duarte* adopted the rights-based approach, holding that "the people" means "all Americans," not a "unspecified subset" of people. 101 F.4th at 671 (quoting *Heller*, 554 U.S. at 580–81); *Youngblood*, 2024 WL 3449554, at *4 (relying on *Duarte* before it was vacated in holding that a defendant charged under § 922(g)(8) is covered by the Second Amendment's plain text because he is "an American citizen who possessed arms in common use."). Again, as *Duarte* is no longer good law, the Court is not bound to apply the rights-based approach.

10

of the right and because "the people" covered by other constitutional rights only sometimes excludes felons).

As the matter is unresolved by the Ninth Circuit, the Court will assume without deciding that the first step is satisfied. *See Roberts*, 710 F. Supp. 3d at 676–77 ("Given these disparate approaches to determining whether an individual's conduct is plainly covered by the Second Amendment, the Court assumes that the Second Amendment's plain text covers Roberts' conduct[.]").

    2.    *Historical Analogues*

Because the Court assumes Nelson's conduct is protected by the Second Amendment, the Government must "justify [§ 922(g)(1)] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. The Government, quoting this Court, argues that the "historical analogues for the prohibition on possession of weapons by . . . felons exist and are well documented in the courts." (Doc. 22 at 8 (quoting *United States v. Spagnolo*, CR 24-119-BLG, 2024 WL 5074920 at *5 (D. Mont. Dec. 11, 2024)). The Government points to numerous examples where courts found that prohibiting felons from firearm possession comports with our Nation's historical tradition of firearms regulation.

Here, the Court finds the Government's presentation[2] of well-documented court decisions demonstrates supportable historical analyses for the prohibition on the possession of weapons by felons. *See e.g.*, *United States v. Aguilera*, CR 23-00217 WHA, 2024 WL 4778044, at *9–11 (N.D. Cal. Nov. 12, 2024) (laws punishing felonies with death and estate forfeiture are well-established, representative historical analogues; § 922(g)(1) is relevantly similar to laws imposing death and estate forfeiture on felons); *United States v. Alvarez-Mora*, 2024 WL 1638382, at *4–6 (D. Nev. Apr. 15, 2024) (holding § 922(g)(1) is consistent with "well understood" founding-era tradition that "the government could disarm those who did not comply with certain communal obligations and abide by the norms of civic society."); *see also Medina v. Whitaker*, 913 F.2d 152, 158 (D.C. Cir. 2019) (discussing the evidence of the "tradition and history" that demonstrates that felons, including "non-dangerous" felons, do not have a right to bear arms under the Second Amendment); *United States v. Ramos*, 2:21-cr-00395, 2022 WL 17491967, at *4–5 (C.D. Cal. Aug. 5, 2022) (discussing laws in existence at the founding that provide representative analogues to the felon in possession statute).

---

[2] "[C]onsideration is [ ] given to Justice Jackson's recent warning about the pitfalls of the *Bruen* methodology. Concurring in *Rahimi*, Justice Jackson cautioned: 'It is not clear what qualifies policymakers or their lawyers (who do not ordinarily have the specialized education, knowledge, or training of professional historians) to engage in this kind of assessment . . . *Bruen* also conscripts parties and judges into service as amateur historians, casting about for similar historical circumstances.'" *Youngblood*, 2024 WL 3449554, at *4 n. 3 (quoting *Rahimi*, 602 U.S. at 745 n.3 (Jackson, J., concurring)).

Most of the Founding Era laws cited by courts restricted the possession of firearms by unvirtuous persons, which included felons who committed nonviolent crimes. *Medina*, 913 F.3d at 158–59 (describing how nonviolent crimes such as forgery and horse theft were felony crimes at the time of the Second Amendment ratification); *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens." (cleaned up)); *Ramos*, 2022 WL 17491967, at *4 (discussing Founding Era laws that allowed for the dispossession of firearms from unvirtuous persons, which included common law felons).

This conclusion is affirmed by the Court's decisions in *Heller*, *McDonald*, *Bruen*, and *Rahimi*. In *Heller*, the Court wrote that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." 554 U.S. at 626. Two years later, in *McDonald v. City of Chicago*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid. 561 U.S. 742, 786 (2010). Then, in *Bruen*, the majority stated that its holding "was in keeping with *Heller*" and repeatedly used the term "law-abiding citizen" in reference to the scope of an individual's Second Amendment rights. 597 U.S. at 9, 29, 31, 38, 60, 70. In a concurring opinion in *Bruen*, Justice Kavanaugh, joined by the Chief Justice, "underscore[d]" that "the Second Amendment allows a 'variety' of gun

13

regulations," and that nothing in the Court's opinion "'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]'" *Id.* at 81 (quoting *Heller*, 554 U.S. at 626 n.26).

Finally, the Chief Justice in the *Rahimi* majority once again affirmed that "many . . . prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 602 U.S. at 682; *see also United States v. Morales*, No. 24-cr-84, 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024) (citing *Rahimi*, 602 U.S. at 681) (holding that the *Rahimi* majority's "discussion of the long history of firearm regulations prohibiting dangerous persons from possessing arms aligns with the conclusion of the courts above: that § 922(g)(1), limited as it is to adjudicated felons, is consistent with the nation's historical tradition of firearm regulation.").

Based on the weight of the historical evidence documented by numerous Ninth Circuit district courts and affirmed by Supreme Court decisions, this Court finds that § 922(g)(1) remains constitutional as applied to Nelson.

## IV.   Conclusion

IT IS SO ORDERED that Defendant Levi Kade Nelson's Motion to Dismiss (Doc. 20) is DENIED.

DATED this 7th day of February, 2025.

SUSAN P. WATTERS
United States District Judge